IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JEFFREY S. BECKER          :          CIVIL ACTION
                           :
            v.             :
                           :
U.S. BANK NATIONAL ASSOCIATION  :          NO. 09-5284

MEMORANDUM

McLaughlin, J.                              September 1, 2011

          This lawsuit arises from the plaintiff's investment in
bonds held in trust by the defendant, U.S. Bank National
Association ("the Trustee").  The plaintiff is a minority holder
of what are referred to in this litigation, and the governing
Trust Indenture, as Series 2004A Bonds.  Citigroup Global Markets
("Citigroup") is a majority owner of the Series 2004A Bonds.[1]
The plaintiff alleges breach of the governing Trust Indenture and
of fiduciary duty.

          The Trustee did not pay the final installment of the
principal due on June 1, 2009 on plaintiff's bonds because of
revenue shortfalls.  The plaintiff contends that the principal on
these bonds should have been paid before interest payments on

---

[1] The plaintiff owns only 0.42% of the total outstanding
Series 2004A Bonds.  However, the plaintiff holds a greater
percentage of a small subset of bonds which matured on June 1,
2009.  The total principal of the Series 2004A Bonds maturing on
June 1, 2009 is $1,010,000.  The plaintiff holds 24.74% of those
bonds.  In contrast, Citigroup holds none of the bonds which
matured on June 1, 2009.  Def.'s Mot. for Summ. J. ("Def.'s
Mot."), Exs. B, Jacobsen Aff. ¶ 6, B-12 at 2; Pl.'s Mot. for
Summ. J. ("Pl.'s Mot."), Ex. A ("Trust Indenture") at 2.

other bonds were paid and that the Trustee should use reserve funds to pay his overdue principal.  Both parties have moved for summary judgment on all claims.  The Court will grant the defendant's motion and deny the plaintiff's motion.

I.   Summary Judgment Record

    A.   Terms of the Trust Indenture

The bonds in this case were issued to fund the construction of a student housing project (the "project").  The bonds are governed by a Trust Indenture which contains three preliminary sections, eleven articles, and nine exhibits.  The sections relevant to this dispute are summarized here.  The third preliminary section, called the Granting Clauses, defines the relationship between the Trustee and the bondholders.  It provides that all bonds are held in trust "for the equal and ratable benefit and security of all and singular the Owners of all Bonds issued hereunder, without preference, priority or distinction as to lien or otherwise, except as otherwise hereinafter provided."  Pl.'s Mot. for Summ. J., Ex. B ("Trust Indenture") at 3.

Article IV of the Trust Indenture directs the allocation of funds from the project and payment of bonds. Section 405 provides that revenue from the project is deposited in the Pledged Revenue Fund.  The Pledged Revenue Fund is then used to pay the Series 2004A Bonds.  Payment of bonds is governed

by section 416.  That section directs the trustee to pay the principal due on bonds as those bonds mature and then to pay interest due on unmatured bonds.  <u>Id.</u> §§ 405, 408, 416(a)(3). The parties refer to this payment scheme as the "416 waterfall."

The Trust Indenture also creates a Debt Service Reserve Fund ("DSRF").  If the Pledged Revenue Fund is insufficient, the DSRF is used to pay debt service on the bonds.  The DSRF is used only to "pay principal of or interest on the Series 2004A Bonds." The Trustee is required to maintain a minimum amount of funding in the DSRF.  <u>Id.</u> §§ 410, 411.

The Trust Indenture also contains an article which governs if there is an "Event of Default."  Section 701 defines various events of default, which include "payment of any installment of interest on any of the Bonds . . . not made when the same shall be come due and payable."  Section 703 describes the remedies available to the Trustee if an event of default occurs.  The Trustee may institute "suit at law or in equity to enforce the payment of the principal . . . and interest on the Bonds then Outstanding or to enforce any obligations of the Authority hereunder."  <u>Id.</u> §§ 701, 703.

Article VII also provides powers to a "majority in principal amount" of bondholders if an event of default has occurred.  A majority of bondholders can direct the Trustee to "accelerate" the bonds, meaning the "entire principal and

3

interest on the Bonds shall thereupon become and be immediately due and payable."  In addition, the majority of bondholders "shall also have the right, at any time, by an instrument or instruments in writing . . . to direct the time, the method and place of conducting all proceedings to be taken in connection with the enforcement of the terms and conditions of this Indenture."  This direction must be in accordance with law and the other requirements of the Trust Indenture.  Id. §§ 702, 703, 704.

Section 705 provides for the payment of funds if an event of default has occurred.  First, section 705 dictates that any money received by the Trustee pursuant to action taken under Article VII is put into the Pledged Revenue Fund.  Then, "all moneys in the Pledged Revenue Fund shall be applied" in a specific order.  Under section 705 the money in the Pledged Revenue Fund is paid first to "all installments of interest then due" and then to "the unpaid principal of any of the [bonds] which shall have become due."  Id. § 705.  The parties refer to this payment scheme as the "705 waterfall."

In addition, section 705 has a second payment scheme as well.  If an event of default has occurred and all outstanding bonds are due, because of acceleration of the debt or the passage of time, the money in the Pledged Revenue Fund is applied differently.  In that case, the money is paid ratably to "the

4

principal and interest then due and unpaid . . . without preference or priority of principal or interest over the other." Id. § 705(b).

Finally, Article VIII governs the obligations of the Trustee. The Trustee is to act "as an ordinarily prudent corporate trustee ordinarily would perform said trusts under a corporate indenture." However, if an event of default has occurred and is continuing, the Trustee's obligation changes slightly. Then, "the Trustee shall exercise such of the rights and powers vested in it" by the Indenture and the Trustee "shall use the same degree of care as a prudent person would exercise or use in the circumstances in the conduct of his own affairs." Id. § 801(a), (m).

    B.   <u>Bond Payments Not Made</u>

Each year, interest payments on outstanding bonds were paid on June 1 and December 1. Payments of principal were paid on June 1 of the year in which the bond matured. <u>See, e.g.,</u> Def.'s Mot. Summ. J. ("Def.'s Mot."), Exs. B-1 to B-2.

Once an event of default occurred, the Trustee performs an analysis to determine whether sufficient funds are available to make each distribution. The Trustee considers the funds available in the trust accounts and the expected revenue from the project. The Trustee also seeks the advice of legal counsel. Def.'s Mot, Ex. B ("Jacobsen Aff.") ¶¶ 7-9.

At the end of 2007, the project began to face financial difficulties.  The Trustee determined that there was insufficient income to pay the interest due on December 1, 2007 from the Pledged Revenue Fund.  The Trustee used the DSRF to make that payment.  No bondholder objected to this action.  This insufficiency of funds constituted the start of a continuing Event of Default under the terms of the Indenture Trust.  Oral Argument Tr.("OA") 4:24-5:4, 4:8-14; Def.'s Mot., Ex. B-1 at 1-2.

The project revenues were again insufficient to pay the scheduled interest payment and principal due on June 1, 2008. Originally, the Trustee determined that it would use the DSRF to pay only the June 1, 2008 interest payment but not pay the principal due at that time.  Def.'s Mot., Ex. B-2.

However, a majority of the Series 2004A bondholders, including Citigroup, directed the Trustee to pay the interest as planned and use a portion of the DSRF to pay the principal maturing on June 1, 2008.  The Trustee considered the totality of the circumstances and then made the payment recommended by the majority bondholders.  No bondholder objected to this action. After this payment, $1,890,492.72 remained in the DSRF.  Def.'s Mot., Exs. B-3, B11 to B13; OA 4:45-24; Jacobsen Aff. ¶¶ 13-15.

The Trustee did not disperse the interest payment due on December 1, 2008 because the revenues from the project were again insufficient.  Def.'s Mot., Ex. B-4.

6

The interest and principal payments due on June 1, 2009 were likewise not paid. At that point, the outstanding interest and payments due to Series 2004A bondholders was $3,912,383.26. The amount available for payment of the Series 2004A Bonds was $2,880,711.77. This was the first time the Trustee had failed to pay principal when due. The plaintiff's bonds matured on June 1, 2009. The plaintiff objected to the Trustee's decision not to pay the principal he was due. Def.'s Mot., Ex. B-5; Jacobsen Aff. ¶¶ 21-22.

On October 19, 2009, Citigroup, as a majority bondholder, directed the Trustee to pay the outstanding December 1, 2008 interest, but not to withdraw money from the DSRF until "the Project may reasonably be expected to generate revenues sufficient to replenish the amount withdrawn on a timely basis." After considering the funds available, the funds expected from the project, and the advice of legal counsel, the Trustee determined that Citigroup's direction was in accordance with the Trust Indenture. The Trustee then paid the interest which was due on December 1, 2008. At that time, the additional outstanding interest and principal still due on Series 2004A Bonds exceeded the amount of moneys available. The plaintiff objected to this payment. Def.'s Mot., Exs. B-6, B-15; Jacobsen Aff. ¶¶ 23-26.

There were again insufficient funds to pay the December

7

1, 2009 interest payment on time.  Def.'s Mot., Ex. B-7 at 3.

In March of 2010, the Trustee determined that it could pay the interest, but not the principal that was past-due from June 1, 2009.  The trustee made this payment from the Pledged Revenue Fund.  The plaintiff objected to this payment.  Def.'s Mot., Ex. B-7 at 4; Jacobsen Aff. ¶ 27.

The Trustee determined that the June 1, 2010 interest and principal payments could not be made because of insufficient revenues.  Def.'s Mot., Ex. B-8 at 3.

However, in September of 2010, sufficient funds were available to pay the then past-due December 1, 2009 interest payment.  This payment was made from the Pledged Revenue Fund. No payment of the outstanding principal due from June 1, 2009 was made.  The plaintiff objected to this payment.  Def.'s Mot., Ex. B-9 at 3; Jacobsen Aff. ¶ 28.

There were again insufficient funds to pay the December, 1, 2010 interest payment.  As of January 20, 2011, insufficient funds were available to pay all of the outstanding debts on the Series 2004A Bonds.  Outstanding debts include the principal due on June 1, 2009, the principal and interest due on June 1, 2010, and the interest due on December 1, 2010.  Def.'s Mot., Ex. B-10 at 2-3.

C.   <u>Procedural History</u>

The plaintiff filed his complaint on November 12, 2009.

8

The Court denied, without prejudice, a motion for summary judgment filed by the defendant on January 28, 2011.  The Court determined that discovery was needed to ascertain several disputed issues.  Having completed discovery, the parties cross filed for summary judgment in January of 2011.  The Court held oral argument on those motions on March 11, 2011.

II.  <u>Analysis</u>[2]

     The plaintiff has asserted both a breach of trust indenture claim and a breach of fiduciary duty claim.  Both parties move for summary judgment on all claims.  The parties agree that the Trust Indenture imposes a fiduciary duty upon the Trustee once an event of default has occurred.  Thus the breach of fiduciary duty claim could be treated as a breach of indenture claim, although the Court will treat it separately.

     The Court begins with the plaintiff's two arguments that the Trustee violated the distribution provisions of the Trust Indenture and then turns to the breach of fiduciary duty claim.  The Court concludes that there are no disputed issues of

---

     [2]A party moving for summary judgment must show that there are no issues of material fact and that judgment is appropriate as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of showing that there are no issues of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once a properly supported motion for summary judgment is made the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 250 (1986).

material fact on these claims and the defendant is entitled to summary judgment on all claims.

A.   Breach of Trust Indenture Claims

1.   Application of Section 705 Generally

First, the plaintiff argues that the Trustee is acting improperly in its allocation of money under the Trust Indenture. The Trustee has made later-due interest payments before making payments on the principal the plaintiff is owed.  The plaintiff argues that this violates section 416 of the Trust Indenture.  If the section 416 waterfall applied, the plaintiff would be entitled to be paid on the June 1, 2009 principal before later-due interest payments were made.  The Trustee would have breached the agreement by paying later interest payments first.  Pl.'s Mot. 12-13; OA at 11:3-8;  Trust Indenture §§ 408, 416(a)(3)(i).

The defendant argues that since the 2007 event of default, the Trustee has been allocating all money under the authority of section 705(a) of the Trust Indenture.  Money allocated under section 705(a) gives priority to past-due interest over past-due principal.  The Trustee argues that it properly paid the June 1, 2009 and December 1, 2009 interest payments before paying the June 1, 2009 principal due, based on section 705.  Trust Indenture § 705(a); Def.'s Mot 20.

The plaintiff responds that only moneys collected as described in Article VII, that is, under "suit at law or in

10

equity" or through acceleration of the debt should flow through the section 705 waterfall.  Under the plaintiff's reading, none of the funds in this case would flow through the 705 waterfall. Even though there is a continuing event of default, the Trustee has taken no legal action or accelerated the debt.  Pl.'s Mot. 12; OA 12:10-13:10; Trust Indenture § 701, 705(a).

The plaintiff makes two arguments in support of this reading.  First, the plaintiff points to the language in section 705 which says "All moneys received by the Trustee pursuant to any right given or action taken under the provisions of this Article shall be deposited in the Pledged Revenue Fund . . . ." The plaintiff argues that this language indicates that Section 705 applies only to money collected "under the provisions" of Article VII.  However, the sentence quoted above is incomplete. It continues "and all moneys in the Pledge Revenue Fund shall be applied as follows."  Section 705 then lists the order in which money is allocated.  Pl.'s Mot. 12-13; Trust Indenture § 705.

Based on this language alone, there is no triable issue of fact raised here.  When read in its entirety, the sentence is clear that once an event of default has occurred, all money in the Pledged Revenue Fund, from whatever source, is allocated through the 705 waterfall.

Second, the plaintiff argues that, unlike section 416, section 705 does not explicitly allocate funds for operations and

maintenance of the project.  From this fact the plaintiff reasons that some funds must continue to be allocated through section 416 even in the event of default or the project would go unfunded. <u>Compare</u> Trust Indenture § 416(a)(1), <u>with</u> <u>id.</u> § 705(a).

The defendant responds that once an event of default has occurred, section 801(m) controls the Trustee's actions. Section 801(m) provides that the Trustee "shall use the same degree of care as a prudent person would exercise or use in the circumstances in the conduct of his own affairs."  This discretion allows the Trustee to allocate money to operations and maintenance.  <u>See</u> <u>id.</u> 801(m); OA 45:12-22.

It is conceivable that the plaintiff's reading of the Trust Indenture is correct.  It could be that the Trust Indenture contemplates one set of distribution rules for funds collected from the project and another for funds collected from legal proceedings in the event of default.  However, it is equally plausible from the face of the contract that the defendant's interpretation is correct.  Because the language of the contract is "susceptible to more than one meaning," an ambiguity is present.  Thus "parol evidence may be admitted to aid the trier of fact in resolving the ambiguity."  <u>River's Edge Homeowners' Ass'n v. City of Naperville</u>, 819 N.E.2d 806, 809 (Ill. App. Ct.

2004).[3]

The plaintiff offers no evidence, other than the language of the contract quoted above, to support his interpretation.  In contrast, the defendant offers expert testimony of industry practice by Robert Landau, a long time practitioner in the field of trust management and author of a casebook on trust administration.[4]  Once an event of default has occurred, it is common industry practice for all money dispersed under a trust agreement to be governed by event of default provisions.  Def.'s Mot., Ex. C, ("Landau Rep.") ¶¶ 1-3, 26.

Because only the defendant has offered evidence on this issue, the Court concludes that the plaintiff has raised no genuine issue of material fact that the Trustee breached the Trust Indenture by allocating money according to the priority designated by section 705(a).

2.  Use of the DSRF

The plaintiff's second argument that the Trustee

---

[3]The Trust Indenture provides that Illinois law will apply to any disputes, and the parties do not dispute that Illinois law is applicable. Trust Indenture § 1208.

[4]The defendant argues that the plaintiff's failure to rebut Mr. Landau's Report is necessarily fatal to his opposition to summary judgment.  The defendant relies on El v. SEPTA, a Title VII case in which the Third Circuit upheld a grant of summary judgment in favor of the defendant. Def.'s Mot. 25-27; El v. SEPTA, 479 F.3d 232 (3d Cir. 2007).
Because the Court grants the defendant's summary judgment motion on other grounds, that argument is not addressed here.

13

violated the terms of the Trust Indenture concerns the use of the reserve fund, the DSRF.  The plaintiff argues that the Trustee violated the Indenture by not using the DSRF to pay the outstanding principal due to the plaintiff.  Pl.'s Mot. 17-18.

The plaintiff first argues that the language establishing the DSRF says it "shall only be used to pay debt service on the Series 2004A Bonds."  Because the Trustee has not used the DSRF to pay the past-due principal, the plaintiff argues that this term has been violated.  Id.; Trust Indenture § 410.

The Court first notes that since the payment of interest and principal on the bonds maturing on June 1, 2008, the funds in the DSRF have not been used by the Trustee.  Thus there is no evidence the Trustee has violated this provision by using the DSRF for any purpose other than debt payment.  The plaintiff argues instead that this section mandates payment of past due principal when there are funds available in the DSRF.  Pl.'s Mot. 17-18.

The Court concludes that the plaintiff has raised no triable issue on this fact.  The plaintiff presents no evidence to support this reading of section 410.  Rather, it seems plain that section 410 limits the use of DSRF funds.  The Court also considers the other provisions of the Indenture, including the requirement that the Trustee act with prudence once an event of default has occurred.  No reasonable jury could conclude that the

14

language quoted above mandates payment from the DSRF when any money is available, regardless of the current state of the project.

The plaintiff also argues that the DSRF is governed by the section 416 waterfall, which gives priority to unpaid principal over payments for unpaid interest.  The plaintiff argues that even if the moneys in the Pledge Revenue Fund flow through the section 705 waterfall, the moneys in the DSRF do not. The plaintiff points out that the language of section 705 refers to "all moneys in the Pledged Revenue Fund" but not to the DSRF. Pl.'s Opp. to Def.'s Mot. for Summ. J. ("Pl.'s Opp.") 8-11; Trust Indenture §§ 416(a)(3)(i), 705.

Again, the plaintiff does not raise a triable issue of fact to support his interpretation.  Section 407(c) of the Trust Indenture provides that the DSRF is used when the Pledge Revenue Fund is insufficient.  By definition, this would be an event of default.  It makes little sense for the Pledge Revenue Funds to be distributed though the section 705 waterfall, and then once depleted, for the DSRF funds to be distributed through a separate distribution scheme.[5]  Trust Indenture § 407.

Even if this language were ambiguous, permitting the

_____

[5]Plaintiff's counsel was unable to address this point in oral argument, relying instead on the argument that the language of section 705 does not specifically reference the DSRF.  OA 15:7-16:17.

consideration of parol evidence, the plaintiff offers no evidence to support his reading of section 705.  The defendant again offers evidence that defendant's interpretation is commonly accepted in the industry.  Trust Indenture § 705; Landau Rep. ¶ 26.

There is no genuine issue of material fact on the interpretation of the sections of the Indenture Trust governing the DSRF.  The defendant has offered evidence that the Trustee acted in accordance with the plain language of the contract and industry custom.  This is contradicted only by the plaintiff's pleadings and assertions.  This is not enough to raise a triable issue.

B.  <u>Breach of Fiduciary Duty Claim</u>

The plaintiff argues that the Trustee has violated its fiduciary duty by not acting with "the same degree of care as a prudent person would exercise or use in the circumstances in the conduct of his own affairs," which is both a fiduciary duty standard and the standard of care required by the Trust Indenture.  OA 4:24-5:4; Trust Indenture § 801(m).

The plaintiff makes two arguments.  The Court addresses both and concludes that neither raises triable issues of fact.

1.  <u>Paying Interest Before Principal</u>

The plaintiff argues that it was not prudent to pay the interest payments from June 1, 2009 and December 1, 2009 while

16

leaving the June 1, 2009 principal unpaid.  Pl.'s Mot. 10.

The plaintiff's first argument is that the Trust Indenture requires the Trustee to pay the outstanding principal before the outstanding interest and the Trustee's failure to follow the Trust Indenture demonstrates a lack of prudence. However, as discussed above, in an event of default, section 705(a) directs the Trustee to pay outstanding interest due before outstanding principal.  So the Trustee did not violate the Trust Indenture agreement by making a payment of an interest payment before a principal payment.  Pl.'s Mot. 14-15.

The plaintiff also argues that there has been sufficient money in the DSRF to pay the outstanding principal due on June 1, 2009.  The plaintiff is correct that at times, sufficient money existed in the DSRF to pay the principal on the June 1, 2009 bonds.  The plaintiff further argues it is imprudent to not pay the principal when any money is available in the DSRF.

However, the Trustee is obliged to protect the interests of all bondholders.  The Trust Indenture requires that the Trustee administer the trust for "the equal and ratable benefit and security of all and singular the Owners of all Bonds issued hereunder, without preference, priority or distinction." Trust Indenture at 3.

The defendant also points to a Fourth Circuit opinion, U.S. Life Insur. Co. v. Mech. & Farmers Bank.  The issue in

17

<u>Mechanics & Farmers Bank</u> was whether the trustee acted imprudently in allowing the issuer to draw upon a Reserved Fund without assurance that the money would be replenished.  The district court held that the trustee should have insisted on a cushion of funds rather than allow the issuer to draw upon this fund while in financial distress.  The Fourth Circuit upheld this ruling, although the court acknowledged that it "might have reached a different conclusion on the facts."  685 F.2d 887, 892, 894 (4th Cir. 1982).

The <u>Mechanics & Farmers Bank</u> case is not controlling here; the Indenture is governed by Illinois law.  However, the case does suggest that a Trustee seeking to fulfill her fiduciary duty should avoid depleting a reserve fund which may not be replenished.

Drawing upon the DSRF to pay the June 1, 2009 principal would have exhausted that account or greatly diminished the amount available for other outstanding and later payments.  Income from the project was uncertain beginning in 2007 and extending through 2010.  The Trustee was entitled to consider the funds available, the likelihood of future cash flows, and the directions of a majority of bondholders in determining whether to draw on the DSRF.  The Trustee was also entitled to consider the need to keep the DSRF as a reserve fund for the benefit of all the bondholders.  The choice not to deplete the fund, given the

18

uncertainty of future income from the project, was not imprudent.

        2.   <u>Benefitting the Majority Bondholders</u>

      The plaintiff also argues that the Trustee is refraining from paying the June 1, 2009 principal owed to him in order to benefit the majority bondholder, Citigroup.

      Despite the plaintiff's arguments that the Trustee is influenced by Citigroup, the plaintiff has pointed to no evidence suggesting that Citigroup exercised inappropriate influence over the Trustee.  Citigroup, and other bondholders, acted within the scope of the Trust Indenture by instructing the Trustee to disperse funds in both May of 2008 and October of 2009.  There is no evidence of other contact between the Trustee and Citigroup. Def.'s Mot, Exs. B-11 to B-15.

      Section 704 of the Trust Indenture says: "The Owners of not less than a majority [of outstanding bonds] shall have the right . . . to direct the time, the method and place of conducting all proceedings to be taken in connection with the enforcement of the terms and conditions of this Indenture."  In both May of 2008 and October of 2009, an event of default was ongoing.  The owners of a majority of bonds executed written instructions that the Trustee take certain action.  Trust Indenture § 704; Def.'s Mot., Exs. B-11–B-15.

      In each case, the Trustee then considered whether the majority bondholders' instructions were permissible under the

19

Trust Indenture.  The Trustee performed an analysis before each distribution to determine whether there was sufficient income to make a distribution.  This included considering the funds available and the funds expected from the project in the future, especially given past insufficiencies.  Jacobsen Aff. ¶ 8; Def. Mot., Ex. D ("Jacobsen Dep.") 63:3-12, 64:13-16.

The Trustee also sought the advice of legal counsel before making dispersal decisions.  Finally, the Trustee received no objection other than the plaintiff's to any of the actions regarding the Series 2004A Bonds.  The Trustee followed the instructions of the majority bondholders only upon concluding that doing so was prudent under the totality of the circumstances.  Jacobsen Dep., 71:7-20; Jacobsen Aff. ¶¶ 10, 12, 14-15, 20, 22, 24-25, 27-28.

In addition, the defendant presents expert testimony concluding that the Trustee's actions were in accordance with the custom and practice in the trust industry.  Landau Rep. ¶¶ 1-2, 24-25, 28-29, 32-33.

The plaintiff is understandably frustrated that the Trustee's actions seem to benefit the majority of bondholders by keeping funds in reserve for future payments.  Correspondingly, the plaintiff is disfavored.  The June 1, 2009 bonds, none of which are owned by Citigroup, have not been paid.  If the Trustee accelerates the debt under section 703, all the funds remaining

will be distributed ratably, not by priority.  This action would be preferred by the majority bondholders, while the plaintiff and those bondholders whose bonds have already matured would surely prefer to be paid now.[6]  Notably, however, Citigroup also owns bonds which matured on June 1, 2010 and have not been paid. Trust Indenture § 705(b); Def. Mot., Ex. B-11.

Despite the plaintiff's frustration, there is no evidence that the Trustee has acted improperly.  The defendant has offered evidence that the approach the Trustee took (and continues to take) was generated by an analysis of available and incoming funds, legal advice offered, industry practice of administering trusts, and the wishes of all of the bondholders except the plaintiff.  There is no evidence that the Trustee's decision was improperly influenced by Citigroup.

The plaintiff has not raised a triable issue of fact to demonstrate that the Trustee acted imprudently in withholding payment of the June 1, 2009 principal.  There is no evidence to persuade a reasonable jury that the Trustee breached its fiduciary duty by holding the DSRF in reserve or paying later interest payments before the principal owed to the plaintiff.

---

[6]The plaintiff argued repeatedly in briefing and at oral argument that the nature of the bond market requires that those with earlier maturity dates be paid first.  Pl.'s Mot. 14-16, Pl's Opp. 11-12; OA 45:8-48:3.  However, the plaintiff did not provide any evidence to support this claim.

III. <u>Conclusion</u>

　　　　For the foregoing reasons, the Court will deny the plaintiff's motion for summary judgment and grant summary judgment in favor of defendant U.S. Bank National Association.

　　　　An appropriate order shall issue separately.